F I S H E R  |  T A U B E N F E L D  LLP

225 Broadway, Suite 1700
New York, New York 10007
**Main** 212.571.0700
**Fax** 212.505.2001
www.fishertaubenfeld.com

Writer's direct dial: (212) 571-0700 ex. 102
Writer's email: michael@fishertaubenfeld.com

February 21, 2025

**VIA ECF**
Hon. Orelia E. Merchant
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: Acosta v. 590-600 Realty Corp. et al.
        Case No.: 21-CV-6835 (OEM)(JMW)

Dear Judge Merchant:

      We represent Plaintiff in this action. Plaintiff and Defendants write to respectfully request that the Court approve their settlement as fair and reasonable under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015) and dismiss Plaintiff's claims.

    **I.**    **FACTUAL AND LEGAL BACKGROUND.**

      Defendants employed Plaintiff as a maintenance worker from 2010 until August 2020 working at a building located at 590-600 Fulton Avenue in Hempstead. According to Plaintiff, he worked 7 days a week from 8:00 a.m. until 8:00 p.m. For this work, Defendants generally paid Plaintiff varying amounts each week but usually supposedly for 56 hours each week. Defendants have maintained some timesheets that purport to show Plaintiff's hours worked, but according to Plaintiff, these timesheets greatly understate the hours that Plaintiff actually worked. Defendants paid Plaintiff via corporate check but did not provide him with a paystub. Plaintiff estimates that his unpaid overtime damages are $127,727.50 and his wage statement damages are $5,000.

      Plaintiff also alleges that throughout his employment, he would complain to Defendant Karan Singh about how he was being paid and asked for an explanation about his pay. According to Plaintiff, Defendant Singh would tell Plaintiff that he was illegal and did not deserve an explanation. In August 2020, Plaintiff alleges that he again complained to Defendant Singh about not being paid properly. In response, Plaintiff claims, Defendant Singh told him he would report him to immigration. Plaintiff claims that Defendant Singh terminated his employment and told

him to leave the apartment or he would call Donald Trump and have him deported. Defendant Singh, according to Plaintiff, also threatened to have Plaintiff beaten up or killed. Afraid for his life, Plaintiff vacated the building with his family. When he left, Plaintiff only took his most necessary possessions.

Plaintiff's wife went to the building a few days later to retrieve the family's possessions but the locks had been changed and, apparently, Plaintiff's possessions had been thrown out. Plaintiff never received his possessions back.

The parties litigated the case and attended a mediation and a settlement conference before Judge Wicks. The case did not settle and the parties prepared for trial. On the morning of trial, the Court proposed that the parties settled for $200,000, which the parties accepted. Ultimately, the parties finalized the settlement in a Settlement Agreement (**Exhibit 1**). Under the Agreement, Plaintiff is to receive $200,000 by the end of 2025, which is broken down as follows: $145,000 to Plaintiff and $55,000 to Plaintiff's counsel, which is 27.5% of the settlement. Defendants also agreed to sign a confession of judgment for 150% of the total should they breach and not timely cure. In exchange, Plaintiff agrees to release his FLSA and NYLL claims against Defendants, as well as any other claims asserted in the case, namely Plaintiff's retaliation and conversion claims. Plaintiff did not agree to a general release. There are also no confidentiality or nondisparagement clauses in the agreement.

## II.     THE SETTLEMENT IS FAIR AND REASONABLE.

The Court should approve the settlement. In determining whether to approve a settlement, courts often look at the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Guajardo v. Titan Constr. Servs. LLC, No. 19-CV-1551 (OTW), 2020 WL 1922642, at *2 (S.D.N.Y. Apr. 21, 2020).

The settlement is reasonable under these factors. First and most important, the Court suggested this settlement on the morning of trial, which is a strong indication of the reasonableness of the settlement. Further, the settlement amount even after fees and costs constitutes approximately 114% of Plaintiff's best-case overtime damages under the FLSA and NYLL. Similarly, given the significant risks and burdens of this litigation, that amount is justified. Notably, Defendants have provided records reflecting that Plaintiff worked fewer hours than he claims and was paid properly for all of those hours. Given all of these risks, Plaintiff benefits from receiving a large portion of his damages now without waiting potentially years to recover and taking the risk of recovering nothing at all. The settlement amount is therefore reasonable.

Further, the parties negotiated in good faith and at arms-length with the assistance of the Court, Judge Wicks, and a mediator. The settlement allows the parties to avoid all of the risks and expenses of litigation, which in this case would be extensive given that the parties were about to start trial. Finally, there is obviously no fraud or collusion involved here.

Notably, no extra factors support denying the settlement. In particular, the release is limited to wage-and-hour claims and the claims asserted in this lawsuit, and there is no confidentiality or nondisparagement provision.

Finally, the attorneys' fees are reasonable. Under the agreement, my firm will receive $55,000 in attorneys' fees and costs, which represents 27.5% of the settlement. Courts regularly approve attorneys' fees of even one-third of the settlement amount in FLSA cases. Carnero v. Bagel Mentch, Inc., No. 21CV0781FBJMW, 2022 WL 3448660, at *4 (E.D.N.Y. Apr. 12, 2022), report and recommendation adopted sub nom. Carnero v. Bagel Mentsch, Inc., No. 1:21-CV-0781-FB-JMW, 2022 WL 3446335 (E.D.N.Y. Aug. 17, 2022); Luna v. J.S. Held LLC, No. 2:21-CV-03072-JMW, 2023 WL 2214012, at *7 (E.D.N.Y. Feb. 24, 2023).

If the Court wishes to engage in a lodestar check, the lodestar is $36,960 (**Exhibit 2**). Plaintiff is therefore requesting a multiplier of 1.49. Because courts "regularly award lodestar multipliers from two to six times lodestar," the Court should approve the attorneys' fees. Arsenal v. Star Nissan, Inc., No. 23-CV-06631 (HG), 2024 WL 1513531, at *3 (E.D.N.Y. Apr. 8, 2024); Villegas v. Jorge's Rest. Corp., No. 23-CV-01492 (HG), 2024 WL 2033495, at *3 (E.D.N.Y. Apr. 24, 2024) (awarding a multipler of 2.4).

I am requesting an hourly rate of $550. I am a partner at Fisher Taubenfeld LLP. I was admitted to the Bar of the State of New York in 2008 and since then have practiced labor and employment law, with a strong focus on wage-and-hour law. I have litigated as the primary attorney dozens of FLSA cases and have been designated class counsel in a FLSA case in this District in Gonzalez et al v. Allied Concrete Industries Inc. et al., EDNY Case No.: 2:14-cv-4771 (GRB)(SIL), where I recently won partial summary judgment in the hundreds of thousands of dollars for the class. I have also successfully won appeals in wage-and-hour matters before the Second Circuit and New York courts. Catzin v. Thank You & Good Luck Corp., 899 F.3d 77 (2d Cir. 2018); Hichez v. United Jewish Council of the E. Side, 179 A.D.3d 576, 117 N.Y.S.3d 214 (N.Y. App. Div. 2020). I am a member of the New York chapter of the National Employment Lawyers Association (NELA-NY) and have been invited to give CLEs on the FLSA. I have also been named a "Rising Star" by Super Lawyers. One Court in this District recently held that the "forum rates in the Eastern District [should] now be $450-$650 for partners." Rubin v. HSBC Bank USA, NA, No. 20-CV-4566, 2025 WL 248253, at *6 (E.D.N.Y. Jan. 21, 2025). I am therefore requesting the midpoint of $550.

The hours expended are appropriate as well. I spent 67.2 hours on this case. The work performed in this case included drafting the complaint, attending multiple settlement conference and/or mediations, engaging in paper discovery, taking and defending depositions, drafting pretrial documents, preparing for and attending the first day of trial, and drafting the settlement documents. The fees are therefore appropriate. Accordingly, the Court should approve Plaintiff's attorneys' fees.

      Thank you for your attention to the above.

                                Respectfully Submitted,
                                --------------------/s/----------------
                                Michael Taubenfeld

Encl.